# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HARRIS KHAN,<br><br>            Plaintiff,<br><br>     v.<br><br>INFOR (US) INC, and CHRIS MCDADE,<br><br>            Defendants. | Case No.: SACV 16-00657-CJC(KESx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

## I. INTRODUCTION

Plaintiff Harris Khan brings this action against Defendants Infor (US) Inc. ("Infor") and Chris McDade ("McDade") for retaliation, California Labor Code violations, wrongful termination in violation of public policy, and defamation.  (*See* Dkt.

14 ["First Amended Compl." ("FAC")].) Two motions are before the Court: Khan's motion to remand and Infor's motion to dismiss. (Dkt. 15; Dkt. 16.) For the following reasons, Khan's motion to remand is GRANTED, and Infor's motion to dismiss is DENIED WITHOUT PREJUDICE.[1]

## II. BACKGROUND

According to the allegations of the FAC, Khan was hired by Infor's predecessor, a company called Lawson, in June 2011. (FAC ¶ 12.) Following Lawson's acquisition by Infor, Khan was promoted to "Vice President in charge of the Office of the Chief Financial Officer." (*Id.* ¶ 14.) Khan's compensation—and, evidently, the compensation of his subordinates—was based on both salary and commission, and accordingly, Khan's superiors would create "metrics" which he and his group would be required to meet in order to participate in certain revenue sharing and commission plans. (*Id.* ¶ 15.) Khan's superiors would initially relate the metrics orally and then follow up with a written compensation plan which, Khan says, would often not reflect the oral promises. (*Id.* ¶ 16.)

Over time, Khan began to suspect that the discrepancies between the oral commitments and written compensation plans were actually part of a process designed to boost the company's profits. Management, Khan says, would promise commissions and then fail to pay them, artificially inflating Infor's profits ahead of a public offering. (FAC ¶¶ 18–20.) When confronted, management would insist that commissions were discretionary and did not have to be paid at all. (*Id.* ¶ 20.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for July 18, 2016 at 1:30 p.m. is hereby vacated and off calendar.

Eventually, Khan went to Defendant McDade, Infor's Director of Finance, to investigate how relevant metrics and quotas were being determined. (FAC ¶ 21.) Rather than assist in Khan's investigation, McDade began to tell others that Khan was "ineffective in his work" and that he was "consistently berating the Finance Department with improper inquiries and questions related to compensation issues." (*Id.*) Khan says that McDade's comments "expressly and impliedly stated that [he] was not performing his job duties effectively" and that he was "a poor employee more concerned with 'rocking the boat'" than doing his job. (*Id.*) Khan also alleges that McDade's comments were known to and encouraged by Infor's Vice President of Finance and Compensation, Erica Bellavia. (*Id.* ¶ 22.)

Commission problems continued. Khan alleges that commissions were "reserved" on Infor's financial statements but then never paid to the employees who earned them. (FAC ¶ 23.) And multiple levels of management were aware of the discrepancies between the commissions Infor said they were paying and the commissions they actually paid. (*Id.* ¶ 24.) Khan continued to make "numerous complaints and inquiries" on behalf of himself, his peers, and his subordinates, to no avail. (*Id.* ¶ 25.)

In June 2014, Khan was assigned a smaller role within Infor, and in November 2014, he received a new compensation plan, which he found unsatisfactory. (FAC ¶¶ 26–28.) Khan complained about the plan to his superiors and requested that it be recalculated as a "bookings plan." (*Id.* ¶ 28.) His superiors agreed that he merited a different plan, but it was not until Khan "reached out to Human Resources to launch a formal complaint" that the superiors produced a "bookings plan" for Khan. (*Id.* ¶ 29.) Khan was forced to accept the plan without viewing it, and when he was made aware of its terms, he found that they differed substantially from his expectations. (*Id.*)

Subsequently, Khan made a complaint on behalf of a co-worker, who Khan believed had been shorted approximately $267,000.00 in commissions. (*Id.* ¶ 34.) An individual retained by Infor to investigate the matter contacted Khan and told him that commission plans were not binding on Infor. (*Id.* ¶ 35.) Two days later, Khan was terminated by Infor, purportedly because of a "restructuring." (*Id.* ¶ 36.) He alleges that his termination was actually retaliation for his consistent complaints about Infor's commission scheme, which he believes was illegally withholding wages from Infor's employees. He also alleges that McDade specifically retaliated against him by repeatedly "denigrating and admonishing him," often in front of his peers, to "stop questioning the logic" of the metrics. (*Id.* ¶ 53.) McDade's comments, Khan says, were relayed to his superiors who terminated him. (*Id.* ¶ 54.)

Based on these allegations, Khan filed a state court complaint in February 2016. (Dkt. 1-1.) The original complaint alleged six employment-related causes of action against Infor and a single cause of action for defamation against McDade. (*Id.*) Infor removed to this Court in April, asserting diversity jurisdiction. (Dkt. 1.) Infor, a citizen of Delaware and New York, acknowledged that McDade and Khan are both California residents, but argued that McDade had been fraudulently joined, that Khan had wholly failed to state a claim against her, and therefore that diversity jurisdiction actually existed. (*See id.*)

McDade subsequently moved to dismiss the defamation claim against her. (Dkt. 10.) On May 9, 2016, the Court granted Infor's motion. (*Id.*) It explained that Khan's complaint did not allege *any* defamatory statements within the applicable statute of limitations, and added that the complaint did not adequately allege that a conditional privilege did not apply. (*See* Dkt. 13 at 4–7.) These defects meant that Khan had wholly failed to state a claim against McDade and that such failure was "obvious according to the settled rules of the state." (*Id.* at 7 (quoting *Hunter v. Philip Morris USA*, 582 F.3d

1039, 1043 (9th Cir. 2009).)  Accordingly, the Court concluded, McDade had been fraudulently joined and grounds for removal actually existed.

The Court granted Khan leave to amend his complaint, and on May 31, 2016, Khan filed his FAC.  The FAC asserts *two* claims against McDade: the claim for defamation, which Khan has now bolstered with some additional allegations, and a claim for retaliation under California Labor Code § 1102.5.  (*See generally* FAC.)  Khan then moved to remand, believing that diversity jurisdiction no longer exists.  (Dkt. 16.)  Infor again moved to dismiss the causes of action asserted against McDade.  (Dkt. 15.)

## III. DISCUSSION

Any civil action brought in a state court but over which a district court has diversity jurisdiction may be removed.  28 U.S.C. §§ 1332, 1441(a).  The defendant removing the action to federal court bears the burden of establishing that the district court has subject matter jurisdiction over the action, and the removal statute is strictly construed against removal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").  Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and complete diversity exists among the parties.  28 U.S.C. § 1332.  "[O]ne exception to the requirement for complete diversity is where a non-diverse defendant has been fraudulently joined."  *Hunter*, 582 F.3d at 1043.

"Joinder is fraudulent 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Hunter*, 582 F.3d at 1043 (quoting *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)).  Conversely, "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the

complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Id.* at 1044. In determining whether a defendant was fraudulently joined, all disputed questions of fact and all ambiguities in the controlling state law must be resolved in favor of the non-removing party. *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). The defendant may present additional facts to show that the joinder is fraudulent. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The removing party carries a heavy burden of persuasion, as there is a presumption against finding fraudulent joinder. *Id.*; *see Gaus*, 980 F.2d at 566. A defendant cannot successfully prove fraudulent joinder merely by arguing that a plaintiff has failed to state a claim. *Peters v. Emeritus Corp.*, CV 15-06137 SJO (SHx), 2015 WL 5436991, at *2 (C.D. Cal. Sept. 15, 2015). Instead, the defendant must show by "clear and convincing evidence" that it will be "effectively impossible" for the plaintiff to state a claim against the non-diverse defendant. *Munoz v. Lab. Corp. of Am.*, EDCV 15-902-GW (DTBx), 2015 WL 4507104, at *1 (C.D. Cal. July 23, 2015).

Here, Infor has not carried its heavy burden of demonstrating fraudulent joinder. It successfully did so on a previous motion to dismiss because Khan had not alleged *any* defamatory statements during the relevant statute of limitations period, and because the "statute of limitations defense is a permissible means by which to establish fraudulent joinder," *Barabin v. AstenJohnson, Inc.*, No. C14-0557JLR, 2014 WL 2938457, at *2 (W.D. Wash. June 30, 2014).[2] Here, by contrast, Khan fleshes out his defamation cause of action with additional allegations that prevent Infor from establishing fraudulent joinder. He alleges, for example, that McDade published defamatory statements regarding him and his work within Infor all the way through his termination on March 13,

---

[2] The elements of a defamation claim are as follows: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007).

2015—in other words, into the relevant statute of limitations period.  (FAC ¶ 84; *see also* Dkt. 13 (discussing one-year limitations period.)  He also recounts a recent experience in which he was abruptly rejected for a position at another company after an Infor employee "became involved with the hiring process," relating his belief that McDade continues to defame him and his work.  (*Id.* ¶ 88.)  Finally, Khan's additional allegations regarding McDade's comments, including that she called him a "troublemaker," (*id.* ¶ 53), and that she "denigrat[ed]" and "admonish[ed]" him in front of his peers regarding his complaints about Infor's metrics, (*id.*), sufficiently persuade the Court that it is not impossible for Khan to state a claim for defamation against McDade and overcome any California Civil Code § 47's conditional privilege, which requires that otherwise privileged statements be made with malice.  *See Peters*, 2015 WL 5436991, at **2–3 (finding no fraudulent joinder where the plaintiff alleged that defamatory statements were made to the plaintiff's colleagues, demonstrating ill will); *O'Neill v. Grupo Radio Centro LA, LLC*, Case No. 2:15-cv-06116-SVW-JC, 2015 WL 6453073, at *4 (C.D. Cal. Oct. 21, 2015) (holding that a plaintiff's allegations regarding a defendant's "campaign of character assassination" by way of "demeaning remarks and defamatory statements" sufficiently stated a defamation claim that could defeat a defendant's assertion of fraudulent joinder).

### B. Retaliation

Khan also alleges that McDade retaliated against him in violation of California Labor Code § 1102.5.  To establish liability under that section, a plaintiff must demonstrate that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two.  *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005).  Khan's FAC alleges that after he alerted Infor managers to what he believed was illegal wage withholding, McDade subjected him to denigration and insults about his job performance, following which he was terminated.  He believes that Infor terminated him in retaliation

for his complaints, and that McDade's comments were crucial to Infor's decision to terminate him.

As with Khan's defamation claim, Infor has not satisfactorily shown that Khan's failure to allege retaliation on McDade's part is "obvious according to the settled rules" of California, *Hunter*, 582 F.3d at 1043. First, the entire issue of individual liability under § 1102.5 is currently unsettled. Section 1102.5 was "amended in 2013 to expand liability from 'an employer' to include 'any person acting on behalf of the employer.'" *O'Neill*, 2015 WL 6453073, at *2; *see also* Cal. Labor Code § 1102.5. And a number of courts in this circuit have recently granted motions to remand where a plaintiff has alleged individual liability against a non-diverse defendant under § 1102.5. *O'Neill*, 2015 WL 6453073, at *3 ("Even if the amended statute in question ultimately does not provide for individual liability, no California Court has currently addressed this issue."); *De La Torre v. Progress Rail Servs. Corp.*, Case No. CV 15-4526 FMO (GJSx), 2015 WL 4607730, at *4 (C.D. Cal. July 31, 2015) (refusing to attempt to "divine" how California courts will construe § 1102.5).

To be sure, McDade does not say that individual liability can *never* inure under § 1102.5. Instead, she says that Khan does not allege that McDade ever *knew* of any protected activity. But this is a blinkered reading of the FAC, which alleges that McDade complained that Plaintiff "was consistently berating the Finance Department with . . . other compensation issues." (FAC ¶ 83.) And those issues included, Khan says, conduct he believed to be illegal: the withholding of commissions from employees who had been promised them. Similarly, although McDade insists that the alleged defamatory comments do not constitute an "adverse employment action" for the purposes of § 1102.5, it is beyond question that such actions can encompass any action that "materially affect[s] the terms and conditions of employment," *Patten*, 134 Cal. App. 4th

at 1387, and that termination qualifies.  And, importantly, Khan alleges that McDade's comments were crucial to his termination.

To be sure, Khan's retaliation allegations against McDade are not especially robust.  McDade was apparently not Khan's direct supervisor, and Khan seems not to be aware of the magnitude of McDade's specific involvement in his termination.  Nonetheless, this is precisely the sort of issue on which a finding a fraudulent joinder would be inappropriate.  Khan has adequately alleged that McDade denigrated him and his work over a long period of time, that her comments affected Infor's decision to terminate him, and that the comments affected his work environment.  Combined with § 1102.5's relatively new provision for individual liability, the Court cannot say that there is *no* possibility that Khan will be able to state a retaliation claim against McDade.  Remand is therefore appropriate.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that McDade has not carried her heavy burden of demonstrating that there is no possibility Khan can state a claim against her.  As she and Khan are not diverse, subject matter jurisdiction is lacking, and this action is REMANDED to Orange County Superior Court.  McDade's pending motion to dismiss is DENIED WITHOUT PREJUDICE.

DATED:     July 13, 2016

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE